JACKSON *v.* COLUMBIA COUNTY.

Opinion delivered January 18, 1915.

ANIMALS—HORSE STABLES—RACE HORSES—STALLIONS—NUISANCE—BURDEN
   OF PROOF.—In an action by a property owner to abate the mainte-
   nance of stables by a fair association where race horses and stal-
   lions were kept, the burden is upon the plaintiff to show by a
   preponderance of the evidence that the keeping of the stables de-
   prived plaintiff of the comforts of home, or rendered life in the same
   uncomfortable. *Semble*, the keeping of stallions in close proximity
   to plaintiff's home and used there for breeding purposes would con-
   stitute a nuisance which could be abated.

Appeal from Columbia Chancery Court; *James M.
Barker,* Chancellor; affirmed.

### STATEMENT BY THE COURT.

Appellant brought this suit against the Fair Asso-
ciation to enjoin as a nuisance the keeping of horses in
a stable erected on the fair grounds near her home in the
town of Waldo. There are thirty or forty box stalls, con-
stituting a solid wall on the south, 225 feet in length, to the
southeast of her residence, the southwest corner of same
being within sixty-two feet thereof, from which point a
wall or high fence continues on to within about thirty
feet of her home.

It is alleged that the stables were built and main-
tained for stabling horses and from eight to sixteen
horses were constantly kept therein, that two stallions
were also kept in them for a greater portion of the time,
that the stench and odor arising from the animals and
their droppings are disgusting and offensive, so much
so as to cause plaintiff and other members of her family
to suffer from nausea; that they are disturbed in their
sleep and forced to close the windows in their home in
order to shut out the stench; that on account of the waste
and refuse from the stables, swarms of flies congregate
there and spread to her premises; that the continual
neighing and stamping of the stallions are both offensive
and annoying to plaintiff. That the association is the
owner of other stables in which horses could be kept, so

located as to cause no annoyance or injury to plaintiff or to others.

The defendant admitted. the construction of the stables as alleged, that from twelve to fifteen horses and four stallions were kept therein; denied all the other allegations of the complaint, and alleged that the stables were kept in a clean and sanitary condition.

It appears from the testimony that from ten to fifteen horses are kept in the stables and three or four stallions the most of the time, that the horses are stabled in the west end, nearest the home of the appellant, that the droppings and waste are carried from there and put in the stables in the east end. The place is not used as a livery stable, but rather as a feed and training stable, and it is not clear whether the stallions are kept for training or breeding purposes. The testimony does show, however, that a horse trainer was in charge at the stables.

On the part of the appellant several witnesses testified that the stench and odor arising from the animals and stables was strong and offensive, and especially so in and about the home of appellant, where she and her two grown daughters dwelt. That the wind from the east, south and southeast gathered the odor, beginning at the east end and coming down on through the whole length of the stables to the end of the high fence, extending from the west end thereof to within about twenty feet of appellant's home, where it was carried directly across to her premises. That swarms of flies were bred and congregated about the stables and spread to her premises and that the neighing and squealing of the stallions was also disturbing to the comfort of the dwellers in the home.

Some of the witnesses testified that appellant's property was reduced in value as much as 50 per cent. by reason of the keeping and maintaining of the stables there.

Other witnesses on behalf of appellee testified that the stables were always kept in a clean and sanitary condition, that no unusual odor nor stench arose therefrom and polluted the air about appellant's premises, several

of them saying the odor was very slight and could not even be detected walking along the street in front of her home, at times.

The mayor testified that upon complaint they had investigated the premises, and the board of health reported that the stables were sanitary.

The court found "from a preponderance of the testimony, that the keeping of the horses or permitting them to be kept in the barns on the present location, in the manner in which they were kept, did not constitute a nuisance," and dismissed the complaint for want of equity and from the judgment this appeal is prosecuted.

*Killgore & Joiner,* for appellant.

The stables in question, as appears by the testimony of those who are in a position to know, is a private nuisance, a source of annoyance which works damage to the property adjoining and inconvenience and injury to the occupants thereof. 29 Cyc. 1152. The question of negligence is not involved, and need not be shown in order to establish liability for the maintenance of the nuisance, or plaintiff's right to an injunction; and a showing that there is no negligence will not defeat a recovery. 29 Cyc. 1155; 131 Ill. 322; 74 Me. 268; 85 Ark. 554; 102 Ark. 293. The annoyance created by a private nuisance need not be such as to endanger health, but it is sufficient if it is offensive to the senses, and renders the enjoyment of life and property uncomfortable, or even causes a well-founded apprehension of danger. 17 Tex. 483; 9 L. R. A. 723; 85 Ark. 553; 9 Ga. 425. See also 29 Cyc. 1157, 1162, 1161; Wood on Nuisances, 594.

While a livery stable in a city or town is not necessarily or *prima facie* a nuisance, it may become so by the manner in which it is constructed or conducted; and we contend that the stable in this case is a nuisance from the manner of its construction, and will remain such as long as horses are kept there. 85 Ark. 522; 9 Ga. 425; 50 Ia. 571; 49 Am. Dec. 421; 17 Tex. 489; 3 Blackstone, Com. 215.

*C. W. McKay,* for appellee.

1.   Appellant having conceded that a livery stable in a town or city is not necessarily or *prima facie* a nuisance, the issue to be determined here is whether or not the evidence before the chancellor showed that the stable in this case had become a nuisance through the manner of its construction or maintenance. Since the appellant's abstract fails to disclose all the evidence adduced at the trial affecting this issue, the lower court's findings will not be disturbed.

2.   If the horses were kept in the stable in such manner as to constitute a nuisance, there is no liability on the part of the appellee. The evidence set out in the record discloses the fact that appellee did not own the horses and had nothing to do with their being kept in the stables. Bare ownership of the stables is not sufficient to fix liability on the appellee for the nuisance. It would be necessary to show that appellee was instrumental in causing the nuisance.   29 Cyc. 1203.

KIRBY, J., (after stating the facts).   In *Durfey* v. *Thalheimer,* 85 Ark. 552, the court said:

"A livery stable, even in a city or town, is not necessarily or *prima facie* a nuisance. It may become so by the manner in which it is constructed or conducted. It is the duty of every one to so use his property as not to injure that of another; and it matters not how well constructed or conducted a livery stable may be, it is nevertheless a nuisance if it is so built or used as to destroy the comfort of persons owning and occupying adjoining premises, creating annoyances which renders life uncomfortable; and it may be abated as a nuisance."

Cyc. says: "A private nuisance is anything done to the hurt, annoyance or detriment of the lands, tenements or hereditaments of another, and not amounting to a trespass, thus any unwarrantable, unreasonable or unlawful use by a person of his own property, real or personal, to the injury of another, constitutes a private nuisance." 29 Cyc. 1152.

In *Blass* v. *Reinman,* 102 Ark. 293, the court said:

"A livery stable in a town or city is not necessarily a nuisance  *  *  *, but if it is conducted or kept or used in an improper manner, if by the unwarrantable and unreasonable use thereof it destroys the comfort of the adjoining owner so as to palpably and sensibly diminish or destroy the lawful use and enjoyment of his property, then the livery stable becomes a nuisance."

The keeper of a jack in a town was held to be a nuisance in Ex parte *Foote,* 70 Ark. 12.

The burden of proving that the keeping of the stable deprived appellant of the comforts of home or rendered life in her home uncomfortable, rested upon her and it was necessary to show it by a preponderance of the testimony, as said in the *Durfey* case, *supra.*

There was testimony introduced, supporting the allegations and contention, but the majority of the court is of the opinion that the finding of the chancellor is not against the clear preponderance of the testimony and it will not be disturbed. If it could be shown that the stallions were kept in such close proximity to appellant's home and used there for breeding purposes, it would have constituted a nuisance that could have been abated, but from the testimony it does not appear that they were so used, but may have been kept in training for racing only, these being stables of the fair association where a track was maintained and racing conducted. The stables can be abated by appropriate proceedings hereafter if they shall become a nuisance.

Finding no error in the record, the decree is affirmed.